PEOPLES BANK AND TRUST COMPANY, GUARDIAN OF ELSA GERTRUDE MOELLER ET AL., INFANTS, v. CARL G. WEIDINGER, EXECUTOR, &c., OF PAUL WEIDINGER, DECEASED.

Submitted December 7, 1905—Decided July 12, 1906.

1. *Pamph. L.* 1903, *p.* 572, § 131, provides that on the hearing of a demurrer the demurrant shall be confined to the grounds stated. In an action by an assignee of a contract, defendant demurred to the declaration on the ground that the contract was without consideration, and that it was not assignable, but did not raise the point that there was no averment of performance or tender of performance on the part of the assignor. *Held,* that if performance or tender thereof was necessary to render the contract completely binding, or to give to the assignor assignable rights, the absence of any averment as to performance, though not mentioned as a ground of demurrer, might be considered in aid of those specified.

2. Where the father of illegitimate children contracted with the mother to pay a certain sum per week to the mother in consideration of the mother's agreement to support, provide for and maintain the children during her life, in the father's place and stead, the mother acquired no right of action under the agreement prior to having performed any services or expended any money on the strength of it.

3. The contract involved the rendition of personal services by the mother, and she could not assign her rights under it.

4. Mutual promises made between two parties for the benefit of a third, being voluntary and gratuitous so far as any consideration between the promisors and the beneficiary is concerned, are revocable by either promisor until acted on by the other parties, and the death of a promisor operates as a revocation.

On demurrer to declaration.

Before GUMMERE, CHIEF JUSTICE, and Justices HENDRICKSON and PITNEY.

For the plaintiff, *Watson & Watson.*

For the defendant, *William H. Corbin.*

The opinion of the court was delivered by

PITNEY, J. The declaration avers, in substance, that Elsa Gertrude Moeller and three others represented by the plaintiff are infants, and are the natural children of Paul Weidinger, deceased, and of one Marianna Moeller, being all born out of lawful wedlock; that Paul Weidinger, from the dates of birth of the children, respectively, until the time of his death, recognized them as his own and cared for, maintained and nurtured them as fully and completely as any lawful parent, expended large sums of money in providing them with food, clothing, shelter and medical attendance, and in addition thereto provided the said Elsa with education in instrumental music; that said Paul Weidinger entered into an agreement with the said Marianna Moeller whereby, in consideration of her undertaking to support, provide for and maintain the children during her life, in his place and stead, in the same style and manner of living in which he had theretofore supported, provided for and maintained them, and of her undertaking to provide a new music teacher for the said Elsa and buy her a new piano, he would make provision in his will so that in the event of his death the said Marianna Moeller should receive the sum of $30 per week and $20 per month for rent money, for the support of herself and the said children during the natural life of the said Marianna. For a breach, it is averred that the said Paul Weidinger died without carrying out his undertaking, and, on the contrary, leaving a last will and testament in which he devised and bequeathed his entire estate for other uses and purposes, naming the defendant as executor. It is further averred that

Marianna Moeller has assigned to the infants all her right, title and interest in the contract and any right of action growing out of the breach thereof, and that the plaintiff has been duly appointed guardian of the persons and property of the infants.

To this declaration the defendant interposes a 'general demurrer, upon the following grounds: (1) That it discloses no lawful contract; (2) that the contract disclosed has no lawful consideration; (3) that the contract is not capable of enforcement against Marianna Moeller or against the plaintiff, and there is therefore no lawful consideration for the alleged promise of the defendant's testator; and (4) that the contract is not lawfully assignable, and therefore plaintiff cannot maintain an action thereon.

The declaration contains no averment of performance, nor even of readiness to perform, on the part of Marianna Moeller or of the plaintiff. This is not specified among the grounds of demurrer, and therefore, under our Practice act (*Pamph. L.* 1903, *p.* 572, § 131), cannot of itself alone be dealt with as a reason for overthrowing the declaration. But if performance or tender of performance is necessary to render the contract completely binding upon defendant's' testator, or is essential to the creation of assignable rights in Marianna Moeller, the absence of such averment may, we think, be given due effect in aid of the grounds of demurrer that are assigned.

So far as the declaration counts upon any cause of action that has accrued to Marianna Moeller, it is, we think, clearly unsustainable. It does not appear that she has performed any services or expended any money on the strength of the contract, and so her assignment to the infants covers only her interest in the contract as an executory contract and any right of action she may have by reason of its repudiation before performance. But the terms of the agreement made between her and the father of the children, as disclosed in the declaration, render it manifest that her personal devotion and motherly care were essential elements of the bargain. It is well settled that contracts involving a relation

of personal confidence of a character such that the contracting parties must have intended them to be performed as personal duties, are not assignable. 4 *Cyc.* 22; *Arkansas Smelting Co.* v. *Belden Company,* 127 *U. S.* 379; *Eastman* v. *Bachelder,* 36 *N. H.* 141; *Pike* v. *Waltham,* 168 *Mass.* 581; 47 *N. E. Rep.* 437; *City of Marquette* v. *Wilkinson,* 119 *Mich.* 413, 420.

It is entirely manifest that Paul Weidinger never contemplated that during the lifetime of Marianna Moeller any person other than her should have the care and nurture of these children. He did not consent or agree that she might absolve herself of the personal duty she had undertaken by "farming out" the children to the care of another. And if she could transfer to another the benefits accruing to herself under the contract, with the reciprocal duties, it is unnecessary to say that she could not make this assignment to the children themselves.

The declaration, therefore, must stand, if at all, upon the original rights conferred by the contract upon the children of Paul Weidinger, and upon those rights alone.

It is obvious that whatever consideration existed for the testator's promise, it did not move from the children. But this circumstance alone would not be sufficient to defeat their right of action. Assuming the contract was lawfully made and for a sufficient consideration, its main object was to confer a benefit upon the children, and it is now provided by statute that in such a case the party for whose benefit the contract was made may maintain an action thereon in his own name, notwithstanding the consideration did not move from him. The rule to this effect established by adjudication with respect to contracts not under seal (*Joslin* v. *New Jersey Car Spring Co.,* 7 *Vroom* 141, and other cases) was extended to contracts under seal by *Pamph. L.* 1898, *p.* 481. And after this court had pointed out the limitation of the scope of this act by reason of its title (*Styles* v. *Long Company,* 38 *Vroom* 413), an act with a broader title was passed. *Pamph. L.* 1902, *p.* 709. The revised Practice act contains a similar provision. *Pamph. L.* 1903, *p.* 541, § 28.

There is no consideration in the way of detriment to the infants to support the contract; that is to say, the detriment that comes to them by the failure of their putative father to perform his undertaking is not such a consideration as will support the agreement. As was said by Lord Chief Justice Campbell, in *Gerhard* v. *Bates,* 2 *El. & B.* 488: "A prejudice to the promisee, incurred at the request of the promisor, may be a consideration as well as a benefit to the promisor proceeding from the promisee, but this must be a prejudice on entering into the contract, not a prejudice from the breach of it."

The father was under no legal duty broad enough to support this contract, and so it must find its sole consideration in the mutual promises of Paul Weidinger and Marianna Moeller, the promise of each being the consideration for the promise of the other.

Such an engagement, being entirely voluntary and gratuitous, so far as any consideration between the promisors and the beneficiaries is concerned, stands, we think, upon the same legal footing as subscription agreements made by two or more persons, whereby the subscribers undertake, each in consideration of the promises of the others, that they will severally contribute moneys to an object of common interest to all.

In such cases it is held that the mutual promises furnish legal consideration each for the other, and render the promise of each legally binding where, before notice of withdrawal of the subscription, and on the faith of the subscriber's promise, money or labor has been expended or liability incurred. *George* v. *Harris,* 4 *N. H.* 533; *Congregational Society* v. *Goddard,* 7 *Id.* 430, 435; *State Treasurer* v. *Cross,* 9 *Vt.* 289, 293; *Trustees, &c., in Hanson* v. *Stetson,* 5 *Pick.* 506, 508; *Amherst Academy* v. *Cowls,* 6 *Id.* 427, 433; *Williams College* v. *Danforth,* 12 *Id.* 541, 544; *Thompson* v. *Page,* 1 *Metc.* 565, 570; *Ives* v. *Sterling,* 6 *Id.* 310, 315, 316; *Ladies' Collegiate Institute* v. *French,* 16 *Gray* 196, 201.

In some of these cases it was intimated, if not held, that the mere acceptance of the promises by the beneficiary, with-

out anything done or liability incurred on the strength thereof, rendered the contracts completely binding upon the subscribers. But this notion is now distinctly repudiated. *Cottage Street Methodist Episcopal Church* v. *Kendall,* 121 *Mass.* 528; *Presbyterian Church of Albany* v. *Cooper,* 112 *N. Y.* 517.

An interesting case is *Lathrop, Receiver,* v. *Knapp,* 27 *Wis.* 214, 225, 230, which, although decided by an equally divided court, is valuable for the learned opinion of Chief Justice Dixon, who expressed the view that where several persons promise to contribute to a common object of advantage to themselves, the promise of each is a good consideration for that of another, and that after (but not before) some of the promisors have performed their agreement, in whole or in part, an action will lie in their behalf against others who have made default. See, also, *Gibbons* v. *Grinsel,* 79 *Id.* 365, 371; *Lafayette County Monument Corporation* v. *Ryland,* 80 *Id.* 29; *Superior Consolidated Land Co.* v. *Bickford,* 93 *Id.* 220; *Hodges* v. *O'Brien,* 113 *Id.* 97, 102; 88 *N. W. Rep.* 901. All these treat the promise as revocable by the promisor until something is done by the other party on the strength of it.

In 27 *Am. & Eng. Encycl. L.* 285, the following propositions are laid down, viz.: (1) A gratuitous subscription, being a mere offer, is susceptible of revocation at any time until it is acted upon; (2) but after acceptance of and compliance with the terms of the subscription, or after liabilities and expenses have been incurred on the faith of the promise, there can be no revocation; (3) if the subscriber dies or becomes insane before his offer is accepted, it is thereby revoked and cannot by any subsequent act showing acceptance be made good as against his estate; (4) conversely, where the subscription is supported by a sufficient consideration, the death of the subscriber does not operate as a revocation thereof. In support of the first and third of these propositions, the following cases, among others, are cited: *Grand Lodge, &c.,* v. *Farnham,* 70 *Cal.* 158; *McClure* v. *Wilson,* 43 *Ill.* 356; *Methodist Episcopal Church* v. *Garvey,* 53 *Id.*

401; 5 *Am. Rep.* 51; *Pratt* v. *Baptist Society,* 93 *Ill.* 475; 34 *Am. Rep.* 187; *Beach* v. *First Methodist Episcopal Church,* 96 *Ill.* 177; *Richelieu Hotel Co.* v. *International Military Encampment Co.,* 140 *Id.* 248; 33 *Am. St. Rep.* 234; *Cottage Street Methodist Episcopal Church* v. *Kendall,* 121 *Mass.* 528; 23 *Am. Rep.* 286; *Williams College* v. *Danforth,* 12 *Pick.* 541; *Twenty-Third Street Baptist Church* v. *Cornell,* 117 *N. Y.* 601; *Phipps* v. *Jones,* 20 *Pa. St.* 260; 59 *Am. Dec.* 708; *Helfenstein's Estate,* 77 *Pa. St.* 331.

These decisions furnish full support for the propositions stated. See, also, *Presbyterian Church* v. *Cooper,* 112 *N. Y.* 517; *Keuka College* v. *Ray,* 167 *Id.* 96, 100.

So far as observed, the precise question now presented has not previously been before the courts of this state. But in *Jordan* v. *Laverty,* 24 *Vroom* 15, where there was a contract between two persons for the benefit of a third, this court held that the two might rescind at any time before acceptance by the third. See, also, *Crowell* v. *Hospital of St. Barnabas,* 12 *C. E. Gr.* (at *p.* 654).

In our opinion, the agreement of Paul Weidinger, set forth in the declaration, remained revocable until acted on by the other parties, and was revoked by his death.

The declaration contains nothing to show that the agreement was acted upon by the infants, nor even that it was communicated to them. As to Marianna Moeller, not only is there no averment that she had performed the agreement on her part, but it appears that the time for performance by her had not arrived when the testator died, leaving a will that disposed of all his property to other uses. For, while the declaration does not in distinct terms aver that by the agreement here care of the children was not to commence until after Weidinger's death, such, we think, is the fair import of its averments; and, construing the pleading most strongly against the pleader, we give to it this interpretation. Indeed, no other interpretation is suggested by counsel.

In all instances that have come to our notice, where a father has been held bound by an agreement to support his illegitimate child, the agreement had been acted on so that

the consideration had become executed. *Beach* v. *Voegtlen,* 39 *Vroom* 472; *Jennings* v. *Brown* (1842), 9 *Mees. & W.* 496, 501; 12 *Law Jour. Exch.* 86; *Linnegar* v. *Hodd* (1848), 5 *C. B.* (*57 Eng. Com. L.*) 437, 439; 17 *Law Jour. C. P.* 106; *Hicks* v. *Gregory* (1849), 8 *C. B.* (*65 Eng. Com. L.*) 378, 387; 19 *Law Jour. C. P.* 81; 13 *Jur.* 1030; *Smith* v. *Roche* (1860), 6 *C. B.* (*N. S.*) (*95 Eng. Com. L.*) 225; 28 *Law Jour. C. P.* 237; 5 *Jur.* (*N. S.*) 918; *Hook* v. *Pratt,* 78 *N. Y.* 371, 377; *Todd* v. *Weber,* 95 *Id.* 181, 192. See, also, *Crowhurst* v. *Laverack* (1852), 8 *Exch.* 208, 213; 22 *Law Jour. Exch.* 57.

The defendant is entitled to judgment on the demurrer.